

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

JERALD C. MANN
ATTORNEY GENERAL



*Superseded by art 29d. VCS*

*Overruled WW-516 and Overruled by WW-424 when conflict*

Honorable T. M. Trimble
First Assistant
State Superintendent
Austin, Texas

Dear Sir:

Opinion No. O-1833
Re: Existence of office of
County Superintendent of
Public Instruction and
related questions.

We are in receipt of your letter of July 1, 1940,
which reads as follows:

"At the November election in 1938, Mrs.
Roy Moore was elected County Superintendent and
duly qualified and assumed the duties of that
office for the four-year term beginning January 1,
1939. Mrs. Moore died on June 25, 1940, and upon
her death questions arise concerning the office
which she held which we deem it advisable to
submit to your Department.

"The scholastic census of Morris County for
the current year is 3013, but it is thought that
the census now being tabulated will fall below
3000.

"1. If the current census should reveal that
the county has a scholastic population of less
than 3000, would the County Judge become Ex-officio
County Superintendent of Schools?

"2. If your answer to the foregoing ques-
tion is that the office would not be merged, does
the Commissioners' Court have the power to ap-
point Mrs. Moore's successor?

"3. If the Commissioners' Court does have
the power to appoint Mrs. Moore's successor, for
what period of time would its appointee serve?

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"4. If your answer is that such appointee would serve only until the next general election, then in what manner would candidates for the unexpired term present their candidacies for office? In connection with this question, your attention is called to the fact that it is too late to file one's request to be placed on the Democratic Primary ballot, and no provision is known for printing candidate's name on the general election ballot.

"5. Does the Commissioners' Court, pending the final tabulation of the current census, have the power to appoint some suitable person to conduct the affairs of this office?"

We assume that the scholastic population of Morris County for the year 1938 was in excess of 3000 and the office of County Superintendent properly established.

Article 2688, R. C. S., 1925, as amended, provides as follows:

"The Commissioners' Court of every county having three thousand (3,000) scholastic population or more as shown by the preceding census, shall at a General Election provide for the election of a County Superintendent to serve for a term of four (4) years, who shall be a person of educational attainments, good moral character, and executive ability, and who shall be provided by the Commissioners' Court with an office in the courthouse, and with necessary office furniture and fixtures. He shall be the holder of a teacher's first grade certificate or teacher's permanent certificate. In every county that shall attain three thousand (3,000) scholastic population or more the Commissioners' Court shall appoint such Superintendent who shall perform the duties of such office until the election and qualification of his successor. In counties having less than three thousand (3,000) scholastic population whenever more than twenty-five per cent (25%) of the qualified voters of said county as shown by the vote for Governor at the preceding General Election shall petition the Commissioners' Court therefor, said Court shall order an election for said county to determine whether

Honorable T. M. Trimble, page 3

or not the office of County Superintendent shall be created in said county; and, if a majority of the qualified property taxpaying voters voting at said election shall vote for the creation of the office of County Superintendent in said county, the Commissioners' Court, at its next regular term after the holding of said election, shall create the office of County Superintendent, and name a County Superintendent who shall qualify under this Chapter and hold such office until the next General Election. Provided, that in all counties having a population in excess of three hundred and fifty thousand (350,000) inhabitants according to the last available Federal Census the County Superintendent shall be appointed by the County Board of Education and shall hold office for two (2) years, provided further, that this provision shall not operate so as to deprive any elected Superintendent of his office prior to the expiration of the term for which he has been elected; provided further that in counties having a scholastic population of between three thousand (3,000) and five thousand (5,000) scholastics, wherein the office of County Superintendent has not been created and a Superintendent elected, then in such counties the question of whether or not such office is established shall be determined by the qualified voters of said county in a special election called therefor by the Commissioners' Court of said county, upon petition therefor as hereinabove specified."

Article 2750, R. S., 1911, reads in part as follows:

"The office of County superintendent of public instruction is hereby created; and the commissioners' court of every county in this State having three thousand scholastic population as shown by the preceding scholastic census, shall provide for the election of a county superintendent of public instruction at each general election . . ."

Article 2701, R. C. S., 1925, provides in part as follows:

"In each county having no school superintendent the county judge shall be ex officio county superintendent and shall perform all the duties required of the county superintendent in this chapter . . ."

Honorable T. M. Trimble, page 4

In the case of Miller v. Brown, (T. C. A. 1919) 216 S. W. 452, Article 2750, R. S., 1911, was construed by the court as follows:

"By the articles referred to, other than 2750, it clearly appears that the scholastic census of Presidio County taken in May and June, 1918, for the scholastic year beginning with September of that year was the next preceding scholastic census taken prior to the general election held on November 5, 1918, and the one controlling the action of the commissioners' court in providing for the election to the office for that year. The scholastic census in general election years is the inquisition made under express legislative warrant and authority and by the statute is made the only basis for the official action of the commissioners' court.

". . .

"If we are not in error in our construction of the above article that the office of county superintendent of public instruction depends for its existence upon the condition of the scholastic census at such general election, there would be no separate and independent office when the scholastic population of the county as shown by the preceding census in a general election year falls below 3,000. In that event the office created or brought into existence by reason of the showing of the scholastic census likewise by reason of the showing of the scholastic census, has no further existence, potential or otherwise..."

In that case the scholastic census had fallen below 3000 on a general election year and although on the following non-election year the census exceeded 3000 it was held the office did not exist. We call attention to the fact that the statute there in question fixed two year terms so that an election would be held at every general election and also note the reasoning of the court to the effect that the existence or continuance of the office depends upon the contingency mentioned.

Article 2688 has since been amended so as to provide four year terms. This department, after such amendment, ruled in an opinion to Hon. W. E. James, First Assistant, State Superintendent, dated April 29, 1936, as follows:

Honorable T. M. Trimble, page 5

"We are of the opinion that under the terms
of this Article the status of a County is deter-
mined by the scholastic census next preceding the
election. In case a superintendent is elected
in a county and at the time of election said county
has in excess of three thousand (3,000) scholastics
then the fact that the scholastics fall below three
thousand (3,000), would not effect the status of
the County Superintendent but he may continue until
he has served the remainder of the four (4) year
term provided for. Of course, at the expiration
of his term if the preceding scholastic census shows
less than three thousand (3,000) scholastics then
no County Superintendent should be elected to suc-
ceed the incumbent."

No reason is given for this holding but it must have
been based upon the proposition that when established, the of-
fice continued for the full four year term else we would have
a county superintendent entitled to hold an office which did not
exist.

It is our opinion that the office of County Superin-
tendent of Morris County having been established by reason of
the scholastic census preceding the general election in Novem-
ber, 1938, being in excess of 3000 scholastics, such office came
into existence for four years notwithstanding such census might
drop below 3000 during the years intervening the general elec-
tion years at which the office would regularly be filled. We are
further of the opinion that the death of the incumbent would not
destroy the office but create a vacancy to be filled as herein-
after pointed out. Your first question is therefore answered in
the negative.

Article 2355, R. C. S., 1925, as amended, reads as
follows:

"The court (commissioners' court) shall have
power to fill vacancies in the office of: . . .
County Superintendent of Public Instruction. Such
vacancies shall be filled by a majority vote of
the members of said court, present and voting, and
the person chosen shall hold office until the next
general election."

Under the authority of the above statute and our
Opinion No. O-604 the answer to your second question is yes.

Honorable T. M. Trimble, page 6


Your third question is answered by our Opinions No. O-1664, O-604, and Article 2355, R. C. S., 1925. In Opinion No. O-1664 it was stated:

"There has been no judicial construction of Article 2355, aforesaid, as to the office of county school superintendent. However, the language is clear and not subject to contrary construction than that the appointee must be up for election, and that the office is open to election at the next general election, and that the term of the appointee will expire on January 1st following the next general election."

With reference to your fourth question we call your attention to Article 2978, R.C.S., 1925, providing for the official ballot which reads in part as follows:

"The names shall appear on the ballot under the head of the party that nominates them, except as otherwise provided by this title. No name shall appear on the official ballot except that of a candidate who was actually nominated (either as a party nominee or as a non-partisan or independent candidate) in accordance with the provisions of this title."

Articles 3100 to 3153, R. C. S., 1925, provide for the selection of party nominees by parties of one hundred thousand votes and over. Articles 3154 to 3158, R. C. S., 1925, provide for the selection of party nominees by parties of ten thousand and less than one hundred thousand, and Article 3162, R. C. S., 1925, provides the method for an independent candidate for a county office to have his name printed upon the official ballot.

Article 2981, R. C. S., 1925, reads as follows:

"When a voter desires to vote a ticket straight, he shall run a pencil or pen through all other tickets on the official ballot, making a distinct marked line through such ticket not intended to be voted; and when he shall desire to vote a mixed ticket he shall do so by running a line through the names of such candidates as he shall desire to vote against in the ticket he is voting, and by writing the name of the candidate for whom he desires to vote in the blank column and in space provided for such office; same to be written with black ink or pencil, unless the names of the candidates for which he desires to vote appear on the ballot, in which event he shall leave the same not scratched."

Honorable T. M. Trimble, page 7

There is no requirement that a candidate for office have his name printed upon the official ballot. If the name of the candidate of the voters' choice is not printed upon the general election ballot he may vote for his choice by writing the candidate's name in the blank space provided for that purpose. The fact that it is now too late for a candidate for nominee of the Democratic party to get his name printed upon the primary election ballot, or as for that matter, the failure of the Democratic party to select a nominee, will not affect the right of the people to elect a County Superintendent at the general election in November.

From the answers to questions one, two and three it follows that your fifth question should be answered in the affirmative, however the appointment would not be merely pending a final tabulation of the census but in accordance with our answer to question number three.

We enclose herewith copies of Opinions No. 0-604, 0-1664, 0-2212 and 0-2476.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By　Cecil C. Cammack
Cecil C. Cammack
Assistant

COC:db

ENCLOSURES

APPROVED JUL 8, 1940

Acting　ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY. BWB
CHAIRMAN